UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Case No.    05-342-02 (RCL) |
| | ) | 05-342-16 (RCL) |
| **JESUS ANTONIO MURILLO-LENIS (2)** | ) | 05-342-17 (RCL) |
| | ) | 05-342-25 (RCL) |
| and | ) | |
| | ) | |
| **JAIME HERNAN GUTIERREZ-DIAZ (16)** | ) | |
| | ) | |
| **GERMAN VILLEGAS-MEJIA (17)** | ) | |
| a.k.a. "El Doctor" | ) | |
| | ) | |
| **ALFREDO LUIS PERALTA-CARRILLO (25)** _____ | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**GOVERNMENT'S MOTION TO EXCLUDE TIME UNDER THE
SPEEDY TRIAL ACT AND DECLARE THE CASE COMPLEX
AND PROPOSED ORDER**

I.  INTRODUCTION

The United States, by and through its attorney, Patrick H. Hearn, Trial Attorney, Narcotic

and Dangerous Drug Section, United States Department of Justice, hereby respectfully requests

this Court to declare this case complex and exclude time under the Speedy Trial Act, pursuant to

18 U.S.C. §§ 3161(h)(7), 3161(h)(8)(A), (B)(ii), (iv), from the calculation of the date by which

defendants Jesus Antonio Murillo-Lenis (Murillo), Jaime Hernan Gutierrez-Diaz (Gutierrez),

German Villegas-Mejia (Villegas) and Alfredo Luis Peralta Carrillo must be tried.

1

## II.  PROCEDURAL BACKGROUND

On September 14, 2005, a grand jury in the District of Columbia returned a two-count original indictment against defendants Alvaro Serrano Archbold-Manner a.k.a "El Negro," a.k.a. "Archie," a.k.a. "Bambino," Jesus Antonio Murillo-Lenis a.k.a. "Leni," a.k.a. "Leni," and Ranfer Manuel Rios-Mercado charging them in Count One with conspiracy to manufacture and distribute cocaine knowing and intending it will be imported into the United States in violation of 21 U.S.C. § 959, in Count Two with distribution of cocaine knowing and intending it will be imported into the United States in violation of 21 U.S.C. § 959 and a forfeiture allegation.

On January 3, 2006, a grand jury returned a superseding indictment adding Jeffrey Lewis, Gareth Daviton Lewis a.k.a. "David Lewis," a.k.a. "Mocho," Gomez-Perez a.k.a. "Chiqui," Juan De Jesus Rincon-Rojas, Gustavo Barbosa-Rodriguez, Ulises Malkum-Bernades a.k.a. "Ulysis Malcom," a.k.a. "Ulyses Malcolm," a.k.a. "Ulysis Malkun," a.k.a. "El Gordo,"a.k.a. "Montoya," and Carlos Delgado-Gomez a.k.a. "Carlanga." to first superseding indictment.

On April 18, 2006, a grand jury returned a second supreseding indictment with an additional four counts (counts three through six) and adding Luis Enrique Castaneda-Gonzalez a.k.a "Kike," Enrique Oyola-Ropero, Victor Antonio Palmera-Quintana, Sergio Rene De Martini-Tamayo a.k.a. "Paisa,"a.k.a. "Rafita," a.k.a. "Henry," Jose Hugo Alvarez-Lozano, Jaime-Hernan Gutierrez-Diaz, German Villegas-Mejia a.k.a. "El Doctor," Gerardo Tobon-Rojas a.k.a. "Mateo," Fernando Zapata-Bermudez the second superseding indictment.

In August 2006 the United States presented provisional arrest requests to the Colombian government all of the other defendants except for Heredia, Jeffrey Lewis, Gareth Lewis, Zazueta, Magana-Perez, Contreras-Novoa, Perez-Rincon.  Provisional arrest requests were sent to the

Jamaican government for Jeffrey Lewis and Gareth Lewis.  At that same time, Heredia-Lopez

was in custody in the Southern District of Florida charged with violating 46 U.S.C. § 1903 in

case number 1:06 cr 20226 in the Southern District of Florida.  Zazueta, Magana-Perez,

Contreras-Novoa,

 Eleven co-defendants, Rios-Mercado, Malkum-Bernades, Delgado-Gomez, Alvarez-

Lozano, Tobon-Rojas, and Zapata-Bermudez and Perez-Rincon, were arrested in Colombia

during August 2006.  Their extraditions are pending before the Colombian courts and they are

expected to be extradited to the United States in an estimated three to six months.  Gareth Lewis

and Daviton Lewis were arrested in Jamaica during August 2006.  Gareth Lewis has been

extradited to the United States.  Daviton Lewis' extradition is pending before the Jamaican

courts.

### III.  FACTUAL BACKGROUND

 The indictment in this matter is the result of a continuing long term international criminal

cocaine trafficking investigation involving the law enforcement agencies and prosecutor's offices

of the United States, Colombia, Jamaica, Panama and Mexico.  The focus of the investigation is

the cocaine trafficking and transportation activities originating in the North Coast area of

Colombia, the transportation of cocaine shipments by individuals in Jamaica and the receipt of

the cocaine by Mexican cocaine trafficking and transportation groups.  This prosecution concerns

an international cocaine trafficking conspiracy involving multiple defendants and co-conspirators

from Colombia, Jamaica and Mexico.  The conspiracy consists of individuals involved in large

scale cocaine drug trafficking and has been operating since 2005.  Evidence in this case includes,

but is not limited to, seizures of cocaine and "go-fast" boats on international waters,

cooperating/government witnesses, surveillance, hundreds of legally authorized wiretapped telephone conversations, which were intercepted in Colombia and Jamaica, spoken in Spanish and patois.

This investigation, in Colombia and Jamaica, through the use of judicially authorized Colombian wiretaps, seizures of cocaine and "go-fast" boats, surveillance and cooperating/government witnesses, identified individuals and groups operating together as a cocaine trafficking organization.  Each individual works with or is a member of these cocaine trafficking organizations.  These organizations work interdependently to finance, purchase, transport and distribute cocaine bound for the United States.  A large number of these individuals were located in Colombia while others were located in Jamaica, Central America or Mexico. The investigation determined that Murrillo, Gutierrez, Villegas and Peralta along with the other indicted co-conspirators, were members of the cocaine trafficking organization.

These organizations typically will specialize in a particular aspect of cocaine trafficking, such as financing and purchasing of cocaine, and join with other organizations who fulfill particular need, such as "go-fast" boat transportation, which will then allow quantities of one thousand kilograms or more of cocaine to be transported to its intended destination, the United States.  Each of the defendants has assisted in arranging financing, purchasing of cocaine, logistical support, transportation or storage of cocaine, providing supplies for the "go-fast" boats, arranging for the receipt of cocaine by the organization or arranging for the delivery of the cocaine to other organizations.

Upon leaving Colombia the cocaine is shipped to Central America or Mexico, where the cocaine is received by other drug trafficking organizations and shipped to the United States.  The

"go-fast" boats will leave the North Coast of Colombia and either meet another ship and transfer the cocaine or travel to the coast of Central America or Mexico and deliver the cocaine.  On certain occasions, in the Carribean Sea, the "go-fast" boat would meet with a larger commercial shipping vessel where the shipping vessel would take the cocaine shipment for transport to Central America or Mexico.  Once off the coast of Central America or Mexico the cocaine shipment would be unloaded onto "go-fast" boats for transport to the mainland by individuals associated with Mexican cocaine trafficking organizations.  The Mexican cocaine trafficking organizations would then transport the cocaine through Central American or Mexico and into the United States.

Judicially authorized intercepts of each of the above-named defendants show their participation in the overall organization.  In various intercepted communications, each of the above-named defendants discusses the purchasing and assembling the cocaine, transport operations, or financial transactions with other members of the drug organization.  Surveillance of the activities of the organization has confirmed trafficking activities discussed by the defendants in the intercepted telephone conversations.

 The investigation of the defendants and their drug trafficking activities began in early 2005.  Judicially authorized telephone intercepts, which began in April 2005, of the defendants and others revealed they were working and coordinating with each other to finance, purchase, assemble cocaine shipments, and arrange transportation and storage of the cocaine. Additionally, telephone call intercepts between defendants and others revealed that they were responsible for several seized shipments of cocaine.

On July 22, 2005, a shipment of cocaine was seized at sea off the north coast of

Colombian.  The Colombian military detected the "go-fast" boats off the North Coast of

Colombia.  A Colombian naval vessel intercepted one of the "go-fast" boats.  Onboard the "go-

fast" boat was 1,537 kilograms of cocaine.  Several crew members were arrested and several

escaped by diving overboard.  Telephone intercepts of conversations between defendants and

others prior to and after the seizure revealed that the cocaine seized was being coordinated and

transported by the organization on or about July 22, 2006.

On January 21, 2006, in Colombia, a truck carrying the 55 kilograms of cocaine was

stopped at a checkpoint and the cocaine was seized.  The 55 kilograms of cocaine were being

transported to the north coast of Colombia to become part of a larger cocaine shipment of more

than 1000 kilograms.  Telephone intercepts of conversations between defendants and others prior

to and after the seizure revealed that the cocaine seized was being coordinated and transported by

the organization on or about January 21, 2006.

On January 22, 2006, a ship, the MV Guayacan, was seized by Colombian authorities

after being prepared for the transportation of the cocaine shipment but prior to the cocaine being

loaded on the boat.  The boat was found loaded with more fuel than allowed by Colombian law.

The large quantity of fuel would allow for travel to Central America or Mexico.  Found onboard

and seized was a satellite phone with New York and Miami numbers in its memory, a map with

marked rendezvous locations, and calculations showing the boat was going to travel to Honduras.

Telephone intercepts of conversations between defendants and others prior to and after the

seizure revealed that organization intended to use the MV Guayacan, on or about January 22,

2006 to transport a cocaine shipment to a location off the coast of Honduras.

On March 7, 2006, 1,015 kilograms of cocaine, being transported in a truck, was seized in

6

the Guajira region of Colombia.  Telephone intercepts of conversations between defendants and others prior to and after the seizure revealed that the cocaine seized was being coordinated and transported by the organization on or about March 7, 2006.

On March 24, 2006, an approximate 2,500 kilogram cocaine shipment was seized onboard a ship, the MV Dan Viking, which was located in the Carribean Sea, by the United States Coast Guard.  Telephone intercepts of conversations between defendants and others prior to and after the seizure revealed that the cocaine seized was being coordinated and transported by the organization on or about March 24, 2006.

Based on the several hundred telephone intercepts and hours of surveillance the investigation has been able to identify each of the defendants and their role within the organization.  The investigation, through the same telephone intercepts and surveillance, has been able to verify that the defendants were responsible for coordinating and transporting the cocaine seized on July 22, 2005; January 21, 2006; March 7, 2006;  March 27, 2006 and attempted to transport cocaine on January 22, 2006.

The investigation has shown that Murillo, according to witnesses, surveillance, and recorded telephone conversations is a "go-fast" boat captain.  "Go-fast" boats are open-bow boats with two or more outboard motors.  They are used to transport large quantities of cocaine from Colombia to other ocean-going vessels so the cocaine can be delivered to Central America or Mexico for ultimate transportation to the United States.  Witnesses have stated that, in addition to being a "go-fast"' boat captain, Murillo is also responsible for the organization of the crew, communications, logistics, engines and mechanics for the boats that transport the DTO's cocaine. He is also responsible for obtaining "asset" reports.  Asset reports provide the location on the

open seas of Colombian and United States naval vessels.  The DTO uses that information to

avoid detection and apprehension of the boats carrying its cocaine on its way to the United

States.  As a "go-fast" boat captain, Murillo is responsible for taking cocaine shipments from

Colombia to either an intermediary point in Central America or the Caribbean Basin, or to other

larger vessels at sea, onto which the cocaine is loaded.  Witnesses have stated that Murillo has

said he was a captain for one of the "go-fast" boats seized on July 22, 2005.  He escaped capture

by the Colombian Navy by jumping overboard.

        The investigation has shown that Gutierrez, according to witnesses, surveillance, and

recorded telephone conversations, works with another member of the DTO, who is also charged

in this case, as a financier.  Gutierrez is responsible, along with that other DTO member, for

arranging financing for the DTO's cocaine purchases and shipments.  Witnesses have stated that

Gutierrez-Diaz, along with another DTO member, advance the money for cocaine shipments, for

which the other member of the DTO facilitates the transportation to Mexico.  Witnesses have

stated there have been discussions between Gutierrez and another DTO member regarding

cocaine shipments, investing in those shipments and  financing the 1,015 kilogram cocaine

shipment seized on March 7, 2006.

        The investigation has shown that Villegas, according to witnesses, surveillance, and

recorded telephone conversations, coordinates the purchasing, financing, shipment and

transportation of cocaine from Colombia to the Mexican cocaine trafficking organizations.  He

arranges and coordinates DTO cocaine shipments from Colombia to Mexico.  Witnesses have

stated that Villegas has had discussions with Mario Francisco Magana-Perez and Heriberto

Zazueto, two representatives of Mexican cocaine trafficking organizations, in order to facilitate

organization cocaine shipments to Mexico. To facilitate the cocaine shipments, Villegas works with other members of the DTO, including Gerardo Tobon-Rojas and Fernando Zapata-Bermudez. Witnesses have stated that Villegas coordinated the January 22, 2006, attempt to use the MV Guayacan to transport cocaine. There were numerous discussions among Villegas, Tobon-Rojas and Zapata-Bermudez regarding the use of the MV Guayacan and getting it ready to transport the cocaine.

The investigation has shown that Peralta, according to witnesses, surveillance, and recorded telephone conversations, allows his property to be used by the DTO to store cocaine shipments, assemble cocaine shipments and to launch "go-fast" boats transporting quantities of cocaine of a thousand or more kilograms. Witnesses have stated that he was involved in and allowed his property was used to store the cocaine and launch the "go-fast" boats recovered during the July 22, 2005, seizure.

## IV.  INVESTIGATIVE BACKGROUND

This case involves the extraterritorial application of United States law. This case is the result of an investigation beginning in approximately 2005. The investigation of this case occurred in the United States, Colombia, Jamaica, Mexico Panama and the Carribean Sea by Special Agents of the Drug Enforcement Administration (DEA) and by law enforcement authorities of Colombia, Jamaica and Panama working independently of or in cooperation with the DEA.

The evidence supporting the indictment was developed and gathered through various means. There is a significant amount of telephone wiretap intercepts by Colombian and Jamaican law enforcement authorities. The recordings of these intercepts will need to be

9

provided by Colombian and Jamaican law enforcement authorities to the United States government. The recordings will need to be reviewed to determine which calls contain pertinent, relevant and discoverable conversations, which then can be provided to the government. The United States government will also review the recordings to determine their content and provide them to the defense. The government is in possession of the recordings and is currently making them available to the defendants through the discovery process. These conversations are in Spanish and Patois and for use as evidence will require translations to English.

Evidence was also developed through interviews with witnesses and cooperators. The majority of these interviews and documenting reports were conducted in Spanish. There are seizures of cocaine, associated with the defendants and the organizations, which occurred in Colombia and in international waters with the cooperation of the United States and Colombian authorities. These seizures resulted in the large number of reports, documents and evidence. In addition, there is law enforcement surveillance by Colombian authorities in Colombia. The result is hundreds if not thousands of pages of documents. A large number of the documents are in Spanish and will necessitate translations into English. Also, there are witnesses, both civilian and government, who do not live in the United States, but who will need to come to the United States for a trial and possibly any evidentiary hearings.

The discovery in this case will be time consuming and complicated by the fact there are numerous calls to be reviewed and transcribed, foreign language translations, international drug seizure and foreign evidence. All of these materials will have to be provided to and reviewed by defense counsel before decisions can be made about how to proceed with their clients' defenses, including whether to file pre-trial motions, whether to enter into plea negotiations and whether to

10

proceed to trial.  Pre-trial motions may be based, in large part, upon the discovery provided by the government.  Defense counsel will have to review the substantial volume of evidence, including documents and records in order to determine what, if any, pre-trial motions are appropriate.

## V.  ARGUMENT

A.    Introduction

Title 18, United States Code, Section 3161(h)(8)(A) allows the court to exclude a period of delay from the Speedy Trial Act calculation if the Court finds  "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Section 3161(h)(8)(B) sets forth the factors the court may consider when determining whether to exclude time pursuant to Section 3161(h)(8)(A).  Where the court finds that a case is,

> so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that is unreasonable to expect adequate preparation for pretrial proceedings or for the trial within the time limits established,

or that,

> failure to grant such a continuance in a case . . . not so unusual or complex . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation . . . ,

the court may exclude such time as necessary to serve the ends of justice.

18 U.S.C. § 3161(h)(B)(ii), (iv).

B.    This Case Should be Excluded Under the Speedy Trial Act Due to Its Complex Nature.

This case is complex due to the international nature of the investigation, the crimes charged in the indictment, the number of defendants, and the nature of the evidence supporting the charges in the instant indictment, all of which justifies an exclusion of time under 18 U.S.C. §

11

3161(h)(8)(A).  Applying the factors set forth in Section 3161(h)(8)(B), courts have routinely

excluded reasonable periods of time in cases similar in scale and complexity to the instant case.

Based upon the number of defendants, the crimes charged in the indictment, the amount of

evidence involved, the need for sufficient time to research, draft and file motions, and prepare

transcripts and other evidence for trial, the United States submits that this case is sufficiently

unusual and complex and that a reasonable time is necessary for the effective preparation by both

the defense and the government to support the exclusion of time, pursuant to 18 U.S.C.

§3161(h)(8)(A) and (B)(ii), (iv).  Additional time will necessarily be required for the defense

counsel to adequately prepare by reviewing the evidence, determining the appropriate motions to

be filed, if any, and preparing for trial.  See United States v. Gambino, 59 F.3d 353 (2d Cir.

1995) (trial court has broad discretion to grant speedy trial exclusion based on complexity of the

case when such factor complexity makes it necessary to prepare for fair trial); United States v.

Clymer, 25 F.3d 824 (9th Cir. 1994) ("complex" finding made to exclude time for first

continuance); United States v. Butz, 982 F.2d 1378 (9th Cir. 1993) (excludable time based on

extra time needed to complete discovery, file pretrial motions and prepare defense in nine

co-defendant drug conspiracy involving 29 separate charges).  Indeed, courts have  recognized

that the necessity of gathering and producing a large number of documents increases the

complexity of a case and can justify exclusion of time under the Speedy Trial Act.  See United

States v. Beech Nut Nutrition Corporation, 871 F.2d 1181, 1197-1198 (2d Cir.) (case in which

government made available to defendants approximately 30,000 documents was "complex within

the meaning of the Speedy Trial Act"), cert. denied, 493 U.S. 933 (1989).

       Findings of complexity and resulting exclusions of time have been based on the presence

of a large amount of evidence gathered by means of court-authorized wiretaps.  Production and

review of wiretap evidence often take a substantial amount of time, justifying the exclusion of

such time from the Speedy Trial Act calculation.  See United States v. Gambino, 59 F.3d 353,

358 (2d Cir. 1995) (trial court excluded time under § 3161(h)(8)(A) because case involved

"hundreds of hours of video and audio tape recordings tracking the structure of the criminal

activities of the Gambino organization"), cert. denied, 517 U.S. 1187 (1996); Butz, supra, 982

F.2d at 1381 (exclusion of time justified in part because evidence of charged drug conspiracy was

in form of "hundreds of hours" of conversations intercepted pursuant to a Title III wiretap);

United States. v. Ditommaso, 817 F.2d 201, 210 (2nd Cir. 1987) (case involving "hundreds of

reels of [audio]tapes" found sufficiently complex to justify exclusion of time under §3161

(h)(8)(A)).

　　　　The presence of multiple defendants in a drug trafficking conspiracy case has been

frequently cited as the basis for exclusion of time.  See Ditommaso, supra, 817 F.2d at 210 (2d

Cir. 1987) ("we agree that this multi-defendant, international drug smuggling and

money-laundering case was sufficiently complex to warrant excludable time"); United States v.

Brooks, 697 F.2d 517 (3d Cir. 1982) (case declared complex that alleged a drug manufacturing

and distributing conspiracy involving nine people, with four counts of substantive drug offenses

involving various members of conspiracy, where not all defendants had secured counsel, and

where discovery had not been completed); United States v. Fogarty, 692 F.2d 542, 546 (8th Cir.

1982) ("the complexity of the case, involving seven co-defendants and multiple overt acts

occurring in seven states, outweighed the interests of the individual defendants" and justified

exclusion of time under § 3161(h)(8)(A)), cert. denied, 460 U.S. 1040 (1983); United States v.

13

Ambrosio, 898 F. Supp. 177, 192 (S.D.N.Y. 1995) (ends of justice exclusion justified by complexity of case, where indictment charged 17 defendants with large-scale drug conspiracy).

The particularized needs and requirements of international criminal prosecutions make these types of cases uniquely complex. The requirements of international protocols and treaties to obtain foreign evidence, foreign witnesses and foreign documents, which need to be translated, and the necessity for international travel, present additional hurdles for both the government and the defendant. See United States v. Kamer, 781 F.2d 1380 (9th Cir. 1986) (the exclusion of the case from the speedy trial requirements for additional trial preparation was supported by a complex case that had numerous overseas documents, most of which were in the Dutch language, and many foreign witnesses); United States v. Al-Arian, 2003 W.L. 21403733 (M.D. Fla.) (a case involving a group of international criminals with 21,000 hours of recorded conversations in Arabic, hundreds of boxes of documentary evidence, and voluminous other foreign law enforcement materials was sufficiently complex to grant a continuance of 19 months). See also, United States v. Strong, 608 F. Supp. 188 (E.D. Pa. 1985) (concluding the failure to grant an ends of justice delay as a complex case would deny the government needed evidence and time necessary for effective preparation in a complex case that sought evidence from Hong Kong and Singapore).

In this case, the interests of justice would be served by the scheduling of the trial date at a future date because of the complex nature of the prosecution. This case, which involves an international cocaine trafficking conspiracy, is sufficiently complex to justify a speedy trial waiver based upon the complexity of the case. Specifically, the indictment charges twenty-five named defendants with a conspiracy beginning on or about April 28, 2005. The indictment

14

charges one conspiracy count and five substantive cocaine trafficking counts.  Furthermore, the proof in this case will require the government to prove multiple acts that occurred outside the District of Colombia, including, more significantly, acts committed outside of the United States

The investigation conducted in this case has generated hundreds of recorded phone conversations, hundreds if not thousands of pages of both United States, Colombian and Jamaican police reports, as well as voluminous other physical and documentary evidence.  Many if not most of the documents are in Spanish.  Moreover, many of the government's witnesses reside outside the United States and must be brought to this country  to testify at trial.  In addition, because the case involves the extraterritorial application of United States law and the prosecution of a multiple member international drug conspiracy, it may present novel questions of fact or law.  The international and maritime nature of this case presents several other complex pretrial issues.  These include issues of jurisdiction, arrest, post-arrest statements, and searches and seizures on the high seas and in foreign countries.  While some of the issues which may arise may not be entirely novel, they will most certainly be formidable.

Accordingly, the government submits that the ends of justice would be served by a continuance and outweigh the best interests of the public and the defendant in a speedy trial. Accordingly, the Government requests that the case be certified as complex and that the Court consider the setting of the time for trial in approximately six month or more in the future.

C.    The Time Until the Remaining Defendants Are Extradited From Colombia Should be Excluded Under the Speedy Trial Act.

Previously, the government had informed the court that it was not taking the position that the court delay the case and exclude the time from the Speedy Trial Act until the defendants in

custody in Colombia and awaiting extradition are brought before the court.  However, upon review the period of time, three to six months, in which those defendants will be extradited to the United States, the government believes that time is not an unreasonable amount of time to delay the case in order to await their extradition.  Consequently, the government requests the court consider excluding from the Speedy Trial Act the period of time until those defendants are extradited and brought before the court.

The Speedy Trial Act permits certain periods of time to be excluded from this seventy-day period.  "The following periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence."  18 U.S.C. § 3161(h).  One specific exception excludes, "a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted."  18 U.S.C. § 3161(h)(7).  See United States v. Varella, 692 F.2d 1352, 1358 (11th Cir. 1982)(section 3161(h)(7) embodies Congress' recognition that, "the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time").  Courts have relied upon this provision as a basis to exclude significant periods of time from the computation of a defendant's speedy trial calendar.

Courts have found that the exclusion of time from the Speedy Trial requirements while efforts are made to find and capture fugitive co-defendants are reasonable.  In United States v. Franklin, the court excluded 134 days while police searched for a fugitive co-defendant was reasonable in order to permit a joint trial of the defendants in a drug conspiracy case.  "The utility of a joint trial is particularly compelling here, as the defendants were charged with a single conspiracy so that the government could be expected to recite a single factual history, put on a

single array of evidence, and call a single group of witnesses." 148 F.3d 451, 457 (5th Cir. 1998) See, United States v. Tobin, 840 F.2d 867 (11th Cir. 1988) (the exclusion of eight months and ten days based upon an unsuccessful effort to capture a fugitive co-defendant was reasonable); See also United States v. Register, 182 F.3d 820, 826-28 & n. 8 (11th Cir. 1999) (holding that a 38-month delay, while extraordinary, did not raise speedy trial concerns where the delay had resulted in part from the periodic joinder of defendants and the return of several superseding indictments).

Seven co-defendants, Rios-Mercado, Malkum-Bernades, Delgado-Gomez, Alvarez-Lozano, Tobon-Rojas, and Zapata-Bermudez and Perez-Rincon are in custody in Colombia awaiting extradition. They will likely be extradited to the United States within the next two months. Unlike the circumstances in the Franklin and Tobin cases, the absent co-defendants in this case is not a fugitive from justice whose time of capture cannot be predicted. Instead, these eleven defendants are in the custody of another sovereign nation with whom the United States has an extradition treaty.

The facts present in this case clearly support the exclusion of time under the Speedy Trial Act. The defendants in this case are charged in a single conspiracy and interests of judicial economy strongly weigh in favor of a single trial. Indeed, the facts and evidence that would be presented in a trial for these defendants are so intertwined that the same evidence would be presented for each defendant if they were to have separate trials. The burden of multiple trials in this case would be significant, particularly because of the costs associated with bringing law enforcement witnesses from Colombia to the United States. More important, interests of witness safety would be severely complicated if the cooperating individuals in this case are forced to

17

testify at multiple trials.  Accordingly, this court should rely upon the specific statutory exclusion

of time to toll the running of the Speedy Trial Act until the co-defendants arrive in the District of

Columbia in order to avoid needless separate trials.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Government respectfully requests that this motion be

granted.

Respectfully submitted
KEN BLANCO, Chief
Narcotics and Dangerous Drug Section


_____/s/_____
Patrick H. Hearn
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 305-7606



**CERTIFICATE OF SERVICE**

I hereby certify that, on this 21 day of December, 2007, a copy of the foregoing Government's
Motion to Declare this Case Complex and Exclude Time under the Speedy Trial Act and
Proposed Order was served via ECF to counsel of record.

_____/s/_____
_____Patrick H. Hearn